UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-01466-DOC-DTB  Date: September 11, 2025

Title: Christopher Lloyd Mitchel v. Ford Motor Company et al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):** **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [14]**

Before the Court is Plaintiff Christopher Lloyd Mitchel's[1] Motion to Remand ("Mot.") (Dkt. 14). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. After considering the moving papers and the arguments made therein, the Court **GRANTS** Plaintiff's Motion. The Ex Parte Application to Continue CMC/Scheduling Conference filed on September 8, 2025 is **MOOTED** (Dkt. 16).

**I.   Facts**

The following facts are taken from Plaintiff's Complaint ("Compl.") (Dkt. 1-3). Plaintiff alleges five causes of action against Defendant Ford Motor Company ("Defendant" or "Ford") and Does 1 through 10. *See generally* Compl.

On August 20, 2021, Plaintiff entered into a written warranty contract with Defendant regarding a Ford vehicle that was also manufactured and distributed by Defendant. *Id.* ¶ 7. Plaintiff alleges that Defendant knew of a transmission defect in

---

[1] There appears to be some dispute or confusion about how to spell Plaintiff's name. In any case, the Court refers to Plaintiff as Christopher Lloyd Mitchel in this Order.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 5:25-cv-01466-DOC-DTB | Date: September 11, 2025 |
| | Page 2 |

certain Ford vehicles, including Plaintiff's, before Plaintiff's purchase. *Id.* ¶ 40. Plaintiff states that defects to the vehicle's transmission and engine, among other defects and non-conformities, manifested during the applicable express warranty period. *Id.* ¶ 12. Plaintiff alleges that, under California's Song-Beverly Act, Defendant "failed to conform" the vehicle to the terms of the express warranty after a "reasonable number of repair attempts" and failed to promptly replace the vehicle or make restitution. *Id.* ¶¶ 15-16.

Plaintiff brings the following claims against Defendant: (1) Violation of Cal. Civ. Code § 1793.2(d); (2) Violation of Cal. Civ. Code § 1793.2(b); (3) Violation of Cal. Civ. Code § 1793.2(a)(3); (4) Breach of the Implied Warranty of Merchantability in Violation of Cal. Civ. Code §§ 1791.1, 1794, 1795.5; and (5) Fraudulent Inducement by Concealment; and (6) Negligent Repair. *Id.* ¶¶ 51-85.

## II.     Procedural History

Plaintiff filed their Complaint in Riverside County Superior Court on September 3, 2024 (Dkt. 1-3). On June 10, 2025, Plaintiff filed and served a Request for Dismissal of previously named Defendant Gosch Ford Hemet (Dkt. 1-5). On June 12, 2025, Defendant Ford filed a Notice of Removal from the Riverside County Superior Court to this Court ("Not.") (Dkt. 1).

On August 15, 2025, Plaintiff filed the present Motion to Remand the case to state court ("Mot.") (Dkt. 14). On August 25, 2025, Defendant Ford filed its opposition to the Motion ("Opp.") (Dkt. 15). Plaintiff did not file a Reply.

## III.     Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-01466-DOC-DTB　　　　　　　　　　　　　　　　　　Date: September 11, 2025
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id.* Summary

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. 5:25-cv-01466-DOC-DTB | Date: September 11, 2025 |
| | Page 4 |

judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## IV. Discussion

Here, the parties dispute whether the amount in controversy reaches the jurisdictional threshold. Plaintiff does not expressly allege an amount in controversy over $75,000. *See generally* Compl. Accordingly, Defendant must show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *See Geographic Expeditions, Inc.*, 599 F.3d at 1106-07; *Guglielmino*, 506 F.3d at 699.

Defendant has not met their burden to show that the amount in controversy requirement is satisfied. Defendant states that the amount in controversy exceeds $75,000, but this assertion is not supported by the underlying facts in the Notice of Removal or Opposition. Plaintiff has only alleged that he "suffered damages in a sum to be proven at trial in an amount that is not less than $35,001.00."[2] Compl. ¶ 21.

To estimate the amount in controversy, Defendant uses a mileage offset formula on the vehicle's total sales price or, alternatively, to the vehicle's total cash price or Plaintiff's downpayment and installments toward the vehicle. Opp. at 7-8. "Courts calculate the amount of restitution under the law by first establishing an 'offset' amount for Plaintiff's use of the vehicle (purchase price multiplied by a fraction constituting miles driven divided by 120,000) . . . then subtract[ing] the 'offset' from the vehicle's

---

[2] Defendant's point that Plaintiff rejected an apparent $74,000 settlement offer is not relevant, Opp. at 2, because it was an off-the-cuff response and in any case there is $1,000 between $74,000 and the jurisdictional threshold of $75,000. It is also not entirely clear if the $74,000 offer was based solely on the value of the car, or included other requested compensation the Court will not allocate toward the amount in controversy.

purchase price to get the amount of restitution." *Lee v. FCA US, LLC*, No. CV 16-5190 PSG (MRWx), 2016 WL 11516754, at *2 (C.D. Cal. Nov. 7, 2016). In its first and most conservative calculation, Defendant asserts that the total sales price in the retail installment contract amounted to $83,756. Opp. at 7. Defendant contends that the mileage offset amounts to $20,119.58. *Id*. Subtracting the mileage offset from the purchase price leaves the economic damages at $63,636.42. *Id*. Additionally, to reach the jurisdictional threshold, Defendant includes civil penalties in their estimations. *Id.* at 7-8. Defendant asserts that Plaintiff seeks two times the base amount of civil penalties, which if awarded would bring the most conservative estimate of the amount in controversy to $190,909.26. *Id.* at 7. However, the Court will not include speculative civil penalties or attorney's fees to meet the amount in controversy requirement. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees *may* be included in the amount in controversy.") (emphasis added). Therefore, Defendant has only shown damages of $63,636.42. Because Defendant has not satisfied its burden to show more than $75,000 is at issue in this case, the Court lacks diversity jurisdiction.

Because the Court concludes that the amount in controversy is below $75,000 based on Defendant's version of the evidence, the Court declines to address Plaintiff's request for limited discovery.

The Court's decision not to include speculative awards in the amount in controversy is reinforced by the fact that Congress has not raised the amount in controversy since 1996—nearly three decades ago.[3] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is nearly 100% (*i.e.*, prices have almost doubled). Thus, adjusted for inflation, the amount in controversy should be around $150,000. Stated conversely, a case worth $75,000 in 1996 is worth only $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in controversy, more and more cases are able to meet the jurisdictional threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction to decide purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is

---

[3] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones. Indeed, the current amount-in-controversy is older than both of my law clerks.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-01466-DOC-DTB                                                      Date: September 11, 2025

Page 6

delayed. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

Accordingly, the Court finds that Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. Thus, the Court finds that it lacks diversity jurisdiction over this matter.

## V.     Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Riverside County, California. The Ex Parte Application to Continue CMC/Scheduling Conference filed on September 8, 2025 is **MOOTED** (Dkt. 16).

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                Initials of Deputy Clerk: kdu
CIVIL-GEN